James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

Ross BAKER doing business as Ross Baker Towing, Defendant-Appellee.

Nos. 74–1779, 74–1839.

United States Court of Appeals, Ninth Circuit.

Oct. 26, 1976.

Rehearing Denied Dec. 9, 1976.

James B. Leonard, Atty. (argued), U. S. Dept. of Labor, Washington, D. C., for appellant in No. 74–1799 and appellee in No. 74–1839.

G. G. Baumen (argued), Los Angeles, Cal., for appellee in No. 74–1779 and appellant in No. 74–1839.

Before ELY, LAY * and ANDERSON, Circuit Judges.

LAY, Circuit Judge:

The Secretary of Labor appeals from the dismissal on the merits of an action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The Secretary brought the action seeking to enjoin defendant Ross Baker, d/b/a Ross Baker Towing, from allegedly violating the Act's overtime and record keeping requirements, and to restrain him from withholding wages due under the Act to his employees.

After trial, the district court found that: (1) the defendant's employees were engaged in commerce within the meaning of the FLSA; (2) the defendant's business was not exempt from the provisions of the FLSA as a retail or service establishment; (3) the defendant's employee Danny Davis, during all times mentioned in plaintiff's complaint, was employed in a bona fide executive and administrative capacity, and as such was exempt from the overtime provisions of the FLSA by virtue of § 13(a)(1) thereof; and (4) the defendant violated neither the overtime provisions nor the record keeping provisions of the FLSA.

The Secretary appeals the court's ruling regarding the exemption for Danny Davis and defendant's compliance with the overtime provisions of the Act. The defendant has cross-appealed on the grounds that his employees are not covered by the Act and that, even if they are covered, his business, a tow truck operation, is exempt as a retail or service establishment.

The defendant operates a towing service in the San Fernando Valley, employing nine to twelve tow truck drivers who render roadside automotive repair services and tow disabled or abandoned vehicles on city streets, state highways and interstate freeways. In addition to services rendered to the general public and commercial accounts the defendant has a service agreement with the Auto Club of Southern California,[1] which accounts for approximately 30% of his business. The defendant has also been designated as the official police garage for the Devonshire Division by the Los Angeles Police Department and renders towing service in connection with this assignment.

---

* The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The defendant bills the charges for these services to the Auto Club which pays him from funds obtained through membership fees. The club members do not pay the defendant directly unless the tow exceeds five miles. In that event members pay defendant directly for the fee in excess of five miles.

*The Overtime Provisions.*

As a pretrial stipulation the parties recited:

The following facts are admitted and require no proof:

. . . . .

12. During the period of this action, Defendant guaranteed each of his tow truck drivers $1.65 an hour for the first forty hours and $2.48 an hour for the hours over forty per workweek *or a commission on the total business that each driver brought in during the week, whichever was greater.* For example, drivers were paid 43 percent commissions for all commercial charges and flat sums of $5.00 per police department call and $1.40 per Auto Club call. These same rates and the 43 percent commission rate were paid regardless of whether the services were performed in the first forty hours or in the overtime hours. (Emphasis added).

The dispute between the parties centers around whether the effect of this stipulation regarding manner of payment violates the overtime provisions of the Act.[2]

Section 7(a)(1) of the Fair Labor Standards Act requires that an employee receive compensation for hours worked in excess of forty per week "at a rate not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(a)(1) (emphasis added). The Supreme Court holds "the keystone of § 7(a)" to be the "regular rate of compensation." *Walling v. Youngerman-Reynolds Hardwood Co., Inc.,* 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 709 (1945). In *Youngerman,* as in the instant case, the employee was guaranteed a basic hourly rate for regular hours and one and one-half times that

amount for overtime, or, in the alternative, an "incentive" rate based on actual work completed. The Supreme Court found the incentive rate violative of the statutory mandate. The Court stated: "In the case of piece work wages, this regular rate coincides with the hourly rate *actually received* for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked." *Id.* (emphasis added).

The defendant here argues that "[t]he list of employees showing total hours worked (on a two weeks' pay period) reflect . . that every employee was paid time and one-half his regular rate (which in every instance was in excess of the minimum rate) for all hours worked in excess of 40 hours per week."

The rate schedule and Baker's argument that he has complied with the Act can be better understood by using the examples Baker sets forth.

Employee Terry A. Gilzer for the two week period ending August 31, 1971, worked a total of 136 hours, earning $387.04. The work records reveal that this sum is for $188.80 straight time and $198.24 overtime. It is contended that this reflects $2.36 per hour for two 40-hour weeks and $3.54 per hour for the 56 hours overtime. Similarly for the two week period ending June 14, 1972, he worked a total of 97 hours for which he was paid $358.70. The employer breaks this down into $3.40 per hour or $272 for regular time, and $5.10 per hour for 17 hours overtime totaling $86.70.

Employee Keith W. Smith worked a total of 104 hours for the period ending October 14, 1972. He received a total of $221.68 which the employer breaks down into 80

---

**2.** Another stipulation is that a driver is guaranteed $115.60 for sixty hours worked unless his commissions are greater. This arrangement amounts to the same as $1.65 per hour for forty hours and time and one-half for the other twenty. It does not appear operative unless the amount of commissions is less than $115.60 for a sixty-hour work week. Furthermore it is not a guaranty of weekly pay. As the government points out, under defendant's plan,

whether the employee is paid on the hours-worked basis or on the alternative commission basis, his pay depends on the fortuities of the week's business, and there is no guaranty whatever that the pay for the week will not go below any specified amount. Therefore neither *Walling v. A. H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942), nor 29 U.S.C. § 207(f) is applicable here.

hours of straight time at $1.91 per hour and 24 hours of overtime at a rate of $2.87 per hour.

Employee William T. Gibb, for the work period ending August 31, 1971, received $179.20 straight time for two 40-hour weeks, reflecting a rate of $2.24 for the 80 hours and $194.88 for 58 hours overtime, an hourly rate of $3.36. His total compensation for the pay period was $374.08.

■ From these examples we note that the so-called "regular rate" is constantly varying. Using the example of the employee Gilzer for the weeks ending August 31, 1971, we can readily see that defendant's payment plan as set forth in the pre-trial stipulation, and as explained in the briefs, misconceives the purpose and spirit of the Act as it relates to the determination of the regular rate and its effect on overtime pay. The records indicate that Gilzer worked a total of 136 hours during that two-week period, earning a total of $387.04. As discussed, the defendant argues that this represents $188.80 straight time and $198.24 overtime. However, if the employees were paid as the stipulation suggests, for 136 hours Gilzer should have been paid either $270.88 ($1.65 (80) + $2.48 (56)), or on a commission basis, which ever was greater. Because Gilzer's wages exceeded the stipulated hourly rate total of $270.88, *under the stipulation* the $387.04 necessarily represents the alternative payment of "commissions" during the two-week period. Under the *Youngerman* formula, where an incentive plan replaces an hourly rate, the commissions become, in fact, the *regular rate* and the employee Gilzer should have earned $467.68 on August 31, 1971, based on the following formula: $387.04 ÷ 136 hours = $2.85 per hour; $2.85 (80) + (one and one-half times $2.85, or $4.28 (56) = $467.68. The defendants argue that the $188.80 straight time represents two weeks at 40 hours each at a "regular rate" of $2.36 per hour and 56 hours overtime at one and one-half times $2.36 per hour. However, this computation does not reflect the manner in which employees were paid according to the stipulation agreed upon by the par-

ties. There is nothing in the stipulation or in the testimony of Ross Baker, the only witness, to indicate that employees were paid by a method other than $1.65 per hour salary rate or by commissions *if they were in excess of the hourly rate.* Under this circumstance, the sole inference to be drawn from defendant's records is that the suggested wage rates were computed by working backwards from the total salary paid,

$$\text{using the formula } 80 + 56 \frac{(3x)}{(2)} = \$387.04, \text{ to}$$

determine an hourly rate (x) consistent with the law and the facts. This is impermissible.

The defendant argues that the FLSA "was intended simply to guarantee a minimum wage for 40 hours and time and one-half after 40 hours" and "[w]here an employer goes beyond that, fully complies with the Act and then pays them in excess of that, obviously, he has more than complied with the Act." This not only misreads the required method of computing the *regular rate* under the Act, but misconceives the dual purpose of the Act as well.

■ It is important to distinguish the maximum hours provisions of 29 U.S.C. § 207 and the minimum wage provisions of 29 U.S.C. § 206. One effect of the Fair Labor Standards Act was "to raise substandard wages first by a minimum wage and then by increased pay for overtime work." *Overnight Motor Transp. Co., Inc. v. Missel,* 316 U.S. 572, 577, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942). Another intended effect was "to require extra pay for overtime work by those covered by the act even though their hourly wages exceeded the statutory minimum." *Id.* In the *Overnight Motor* case the plaintiff was a rate clerk paid a uniform weekly salary for fluctuating hours. Nothing above the set weekly wage was ever paid because the workweeks, computed at the statutory minimum rates with time and one-half for overtime, would not require an addition to the weekly wage. The Court concluded

that "the act was designed to require payment for overtime at time and a half the regular pay, where that pay is above the minimum, as well as where the regular pay is at the minimum." *Id.* at 578, 62 S.Ct. at 1220.

The defendant further argues that §§ 7(e)(5), (6) and (7) of the Act, 29 U.S.C. §§ 207(e)(5), (6) and (7), relieve him from including in the "regular rate" amounts men received for standby work after their regular shifts, and whenever they were successful in servicing a call which was not "gone-on-arrival," and paid in excess of one and one-half times the hourly rate. Sections 7(e)(6) and(7) were intended to eliminate from the computation of "regular rate" extra compensation for extra or unusual hours *provided* "such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days," 29 U.S.C. § 207(e)(6), or "during such workday or workweek." 29 U.S.C. § 207(e)(7). Although the record is not clear on this point, and the government has not addressed itself to this question, it would appear that the defendant here pays his employees the same commission rate for work done no matter when performed, if the commission rate is the operative payment alternative. If this is the case neither § 7(e)(6) or § 7(e)(7) aids the defendant.[3] However, in the recomputation, if the defendant can demonstrate to the satisfaction of the trial court that some of the monies received for standby work qualify under §§ 7(e)(6) and (7), the district court should eliminate these sums from the computation of the "regular rate" pursuant to the statute. The parties should address themselves to this issue on remand.

We find that the only conclusion to be derived from the evidence and stipulation of the parties is that the defendant used an alternative commission-based compensation plan which did not properly take overtime hours into account, and thereby violated the Act. Consequently, on remand defendant's employees' actual "regular rate" of pay must be recalculated by dividing their weekly salaries by the number of hours worked, and their overtime reassessed at time and one-half their regular rate for the period embraced by the complaint.

*The Exemption Issue.*

The Secretary also has appealed the district court's ruling that Danny Davis was entitled to an exemption under 29 U.S.C. § 213(a)(1). This section exempts from the Fair Labor Standards Act "any employee employed in a bona fide executive, administrative, or professional capacity." The regulation 29 CFR § 541.1 sets out a number of criteria an employee must meet in order to be classified as an executive. Aside from specified duties, the rule states that an executive:

is compensated for his services on a salary basis at a rate of not less than $125 per week . . . exclusive of board, lodging, or other facilities:

*Provided*, That an employee who . . is compensated on a salary basis at a rate of not less than $200 per week . . . and whose primary duty consists of the management of the enterprise . . . and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.

The Secretary contends that Davis did not "regularly" receive as "all or part of his compensation" a "predetermined amount" in contravention of the "salary test" under 29 CFR § 541.118.[4]

---

3. Section 7(e)(5) is not relevant here. There is no evidence that the defendant pays a "premium rate" for hours worked in excess of 8 per day or in excess of the maximum applicable workweek. The stipulation is simply that employees are paid $1.65 per hour and time and one-half overtime, or commission, whichever is greater.

4. 29 CFR § 541.118 reads:
(a) An employee will be considered to be paid "on a salary basis" . . . if . . . he regularly receives each pay period . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work per-

**434**

■ Although Ross Baker did testify that Mr. Davis was paid $190 to $200 per week, the payroll records of the company do not verify this. On several occasions he was paid fluctuating amounts which were much less than $200. As the government points out, the more hours Davis worked, the more he was paid. His earnings fluctuated from $120 for a 40-hour week to $508 for a 160-hour pay period. For 27 of the 49 semi-monthly pay periods during the two years in question he received less than $411.66, the semi-monthly equivalent of the claimed $190 per week salary.

Under the circumstances, we find that the employer has failed to carry his burden in proving that Davis was exempt under the Act. The district court's finding in this regard must be set aside.

■ On cross-appeal defendant contends that his employees were not engaged in "commerce" as that term is defined under 29 U.S.C. § 203(b) and therefore were not subject to the Act. He also asserts that his business meets the requirements of 29 U.S.C. § 213(a)(2) and that he is exempt as a retail or business establishment. These two issues were rejected in similar cases involving tow truck businesses in *Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652 (9th Cir.), *cert. denied*, 402 U.S. 995, 91 S.Ct. 2173, 29 L.Ed.2d 161 (1971), and more recently in *Brennan v. Keyser*, 507 F.2d 472 (9th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). They are dispositive of the cross-appeal.

The cross-appeal is dismissed; the judgment of the district court finding Danny Davis exempt under the Act is reversed; the judgment of the district court finding the defendant in compliance with the overtime requirements of the Act is reversed and the cause is remanded for an award of unpaid overtime compensation on the basis of time and one-half a "regular rate" recalculated in a manner consistent with the Act and this opinion.

formed. . . . *[T]he employee must receive his full salary for any week in which he performs any work without regard to the* number of days or hours worked. (Emphasis added).