SECRETARY OF LABOR,
Plaintiff, Appellee,

v.

DAYLIGHT DAIRY PRODUCTS, INC.,
Defendant, Appellant.

No. 85–1090.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1985.
Decided Dec. 26, 1985.

Maurice M. Cahillane with whom Egan, Flanagan & Egan, P.C., Springfield, Mass., was on brief for defendant, appellant.

Eleanor J. Lauderdale with whom Francis X. Lilly, Sol. of Labor, Monica Gallagher, Acting Associate Sol., Linda Jan S. Pack, Washington, D.C., for Appellate Litigation, and Albert H. Ross, Regional Sol., Boston, Mass., on brief for plaintiff, appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and WISDOM,* Senior Circuit Judge.

WISDOM, Senior Circuit Judge.

This is another labor case in which we do not have to genuflect to the Secretary of Labor because of the mystique historically attributed to his superior expertise in the field of labor law. The facts simply compel affirmance of the district court which decided in the Secretary's favor.

The Secretary of Labor filed this action against Daylight Dairy Products, Inc., alleging that the company's retail store managers were not paid enough to satisfy the overtime wage requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19. We affirm the district court's judgment against the employer.

## I.

The employer, Daylight Dairy Products, operates fifteen Jane Alden Dairy Stores in Massachusetts and a single store in Connecticut. The Secretary alleges that the employer violated the FLSA during three separate periods. The employer asserts that its store managers are executive employees and therefore are not subject to the

Act, and that it met the requirements of the Act in any event. In Period 1, from March 1976 to December 1977, the employer's store managers were paid an hourly wage. The district court granted the Secretary's motion for summary judgment as to this period, because it found that the managers did not receive a guaranteed "salary" within the meaning of the FLSA. In Period 2, from January 1978 to January 1980, the managers were paid a salary. The Secretary concedes that most of the managers met the executive employee exception to the overtime pay requirement during this period, but contends that managers who supervised less than 80 hours of work per week and managers paid less than $155 per week were covered by the Act. The district court accepted both of the Secretary's contentions. In Period 3, from January 1980 to January 1982, the managers' pay was computed on the basis of the company's own version of the "fluctuating workweek method". The district court found that the company's method violated the FLSA and awarded the store managers three year's back wages plus interest.

## II.

Section 13(a)(1) of the FLSA exempts "any employee employed in a bona fide executive ... capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary". 29 U.S.C. § 213(a)(1). The Secretary has developed a six-part test to determine whether an employee is exempt as a bona fide executive.[1] Two parts of that test are

---

* Of the Fifth Circuit, sitting by designation.

1. The Secretary's test, codified at 29 C.F.R. § 541.1, reads as follows:

The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the Act shall mean any employee:
  (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

  (b) Who customarily and regularly directs the work of two or more other employees therein; and
  (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
  (d) Who customarily and regularly exercises discretionary powers; and

relevant here: the employee must "customarily and regularly direct[ ] the work of two or more other employees", and earn a salary of no less than $155 per week. 29 C.F.R. § 541.1(b), (f). The employee must meet all six parts of the test to be exempt from the overtime provisions.

### A.

■ In Period 1, the company paid the managers an hourly wage. This alone has been held to violate the salary requirement of 29 C.F.R. § 541.1(f). *See Hodgson v. Cactus Craft of Arizona,* 481 F.2d 464, 466 (9th Cir.1973). The company cites *McReynolds v. Pochahontas Corp.,* 192 F.2d 301, 303 (4th Cir.1951), for the proposition that any formula resulting in a guaranteed income satisfies the salary requirement. Daylight Dairy's store managers did not have a guaranteed income. They were paid only for the hours they actually worked, and some in fact did not exceed the $155 per week minimum. We affirm therefore the court's grant of summary judgment in favor of the Secretary as to Period 1.

### B.

■ In Period 2, some managers supervised less than 80 hours of work per week. The Secretary requires that executive employees supervise at least two full-time employees "or the equivalent". 29 C.F.R. § 541.105(a). The regulation states that

> (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compen-

four part-time employees, "two of whom work mornings and two afternoons", are equivalent to two full-time employees. *Id.* In its Field Operations Handbook, the Department's Wage-Hour Division has established a bright-line rule: The equivalent of two full-time employees working 40-hour weeks is any number of part-time employees, as long as the total number of hours supervised exceeds 80.[2] For example, four persons each working 25 hours per week satisfy the requirement, because the hours supervised total 100. A district court has accepted the 80-hour rule. *See Marshall v. Hudson Stations, Inc.,* 86 Lab.Cas. (CCH) ¶ 33,813 (D.Kan.1979). The employer argues that, because four part-time employees require more supervision than two full-time employees, managers who supervise four or more employees should be subject to exemption even if they supervise fewer than 80 person-hours. No doubt four employees need more coordinating than two. We conclude nevertheless that the 80-hour rule is reasonable: it is easy to apply and allows employers to be confident that they are complying with the statute.

■ The employer also argues that managers who meet the 80-hour requirement more often than not satisfy the "regular and customary supervision" requirement. The Secretary, however, determines whether the executive exemption applies on a week-to-week basis, and claims backpay

> sated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government of Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

2. The Field Operations Handbook makes an exception, not applicable here, for industries such as banking and insurance with a standard full-time workweek of slightly less than 40 hours.

only for weeks in which the manager supervised fewer than 80 hours. *See* 29 C.F.R. § 778.104. In this case, moreover, the district court determined that no manager in the category at issue met the 80-hour requirement more than 76 percent of the time. We agree with the district court's conclusion that this falls short of "regular and customary" supervision of 80 hours of work.

■ During Period 2, a second group of managers earned less than $155 per week. Under the Secretary's test, these managers were not exempt. 29 C.F.R. § 541.1(f). The employer argues, however, that these managers were not expected to work a 40-hour week, and so should be exempt even though they earned less than $155. We find the employer's argument, for which it cites no authority, to be without merit. A sliding wage-hour scale would be cumbersome to administer, at best; at worst, it would encourage employers to evade the wage and hour statutes by shortening the workweek to reclassify employees as "executives".

## C.

■ During Period 3, the employer used its own version of the Department's "fluctuating workweek" method. Under the Department's version of that method, the employee receives a guaranteed salary even if the employee works less than 40 hours. If she works more than 40 hours in a week, her wages are computed by dividing her guaranteed salary by the number of hours she actually worked during the week to determine an hourly wage. (Her hourly wage therefore varies from week to week if her hours of work vary.) The employee is then paid straight time for the first 40 hours, and time-and-a-half for over-time.[3]

Daylight Dairy's version of this method was less favorable to the employee. The company paid only straight time for over-time, rather than time-and-a-half.[4] The employer's version of the fluctuating work-week did not satisfy the requirements of the FLSA. In effect, the store managers were paid an hourly wage during Period 3. The store managers testified that they were paid an hourly wage, and the district court found, as to Period 3: "The only thing guaranteed [the employees] was a sum that equaled the total number of hours they worked multiplied by their contracted-for rate: a straight-time calculation".

The employer asserts that the Department's compliance officer told its officials that the employer's method was acceptable. Before the district court, the employer claimed exemption under § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259(a), which provides that the overtime provisions shall not apply if the defendant relied in good faith on any written material issued by the Department or on an "administrative practice or enforcement policy" of the agency. The district court, however, found that the compliance officer did not tell any company official that its method was acceptable. Moreover, this provision has been held inapplicable to oral representations of Department employees. *See Anness v. United Steelworkers of America,* 707 F.2d 917, 921 (6th Cir.1983).

■ Contrary to the defendant's assertions, the district court used the correct method to calculate backpay. The Department divided the employees' weekly earnings by the number of hours worked, and assessed overtime at one-and-a-half times the regular rate. *See Hodgson v. Baker,* 544 F.2d 429, 433 (9th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977).

3. For example, if the employee's guaranteed salary is $250, and she works 50 hours during the week, her hourly wage for that week is $250/50 hours, or $5 per hour. She receives time-and-a-half, or $7.50 per hour, for her ten hours of overtime. So her total salary is (40 hours) ($5 per hour) + (10 hours) ($7.50 per hour) = $200 + 75 = $275. *See* 29 C.F.R. § 778.114(b).

4. In the example above, the manager would receive only ($5 per hour) (50 hours), or $250 under the employer's system.

## III.

■ If the employing company willfully violates the FLSA, it is liable for three years of back wages; it is liable for only two years if the violation is not willful. 29 U.S.C. § 255(a). The district court applied the test we set out in *Marshall v. Erin Food Services, Inc.*, 672 F.2d 229 (1st Cir. 1982), and found that the employer's violations were willful.[5] Under *Erin Food Services*, "the test for willfulness is whether the employer knew or had reason to know that the FLSA was applicable to its employment practices". *Id.* at 231; *see also Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142, (5th Cir.1972), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). The *Coleman* case, which we cited in *Erin Food Services* in support of our standard, holds that an FLSA violation is willful if the employer knew the Act was "in the picture". 458 F.2d at 1142.

The employer argues that the Supreme Court's decision in *Trans World Airlines, Inc. v. Thurston*, — U.S. —, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) rejects *Erin Food Services* and *Jiffy June* by implication. The employer's argument is unconvincing. The *TWA* case construed a provision allowing the recovery of double damages for willful violations of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b). The Court concluded that, because the double damages provision was intended to punish the employer, the employer should pay double damages only if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by ADEA". — U.S. at —, 105 S.Ct. at 624, 83 L.Ed.2d at 536. The Court expressly noted that the *Jiffy June* standard might be appropriate for statute of limitations questions. — U.S. at —, 105 S.Ct. at 625, 83 L.Ed.2d at 537.

The employer cites cases applying a similarly stringent definition of willfulness under § 16(b) of the FLSA, which allows the award of double back wages. These holdings do not govern our statute of limitations issue; indeed, they suggest that the reasoning of *TWA* applies to the punitive double back wages provision and not to the non-punitive statute of limitations.

We conclude that *Erin Food Services* is still good law and governs this case. The statute of limitations is not punitive; indeed, the statute often results in less than full compensation for underpaid employees. Because the Act is remedial legislation, we construe it in favor of coverage of the employee. *See Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975). We conclude that a more inclusive definition of willfulness is appropriate in the statute of limitations setting. Our course clearly is left open by *TWA*.

The court's findings of willfulness are supported by the record, and we will not disturb them.

## IV.

■ Finally, the employer contends that the case should be remanded for reconsideration of the question whether interest should be awarded on the back wages it owes to the employees. The employer asserts that the district court erred in awarding interest on the wages from the date of accrual to the date of payment.[6]

Although the Act does not mention interest awards, almost all of the pertinent cases hold that interest is recoverable. *See Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 57–58 (2d Cir.1984) (citing cases). At least one court, however, has held that it is not recoverable. *See Hodgson v. Continental Parking Corp.*, 65 Lab.Cas. ¶ 32,-478 (D.Cal.1971).

We join the majority of circuits in holding that interest is recoverable under the Act. The employees have been wrongfully deprived of the use of the money; the

---

5. The district court did not make a specific finding that the Period 1 violation was willful, but it assessed three years' backpay for that violation. The testimony clearly supports a finding that the employer knew that the FLSA applied.

6. The award thus included pre-judgment and post-judgment interest.

interest payment fully compensates them for the wrong. The employer has had free use of the money; if it did not have to pay interest, it would have an incentive to underpay its employees. For these reasons we agree with the Second Circuit that "it is ordinarily an abuse of discretion not to include ... interest in a back-pay award under the FLSA." *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 58 (1984). The district court in this case did not err in awarding pre-judgment and post-judgment interest to the employees.

## V.

Daylight Dairy Products willfully violated the FLSA by denying its managers overtime compensation. The employer must compensate these employees by paying them back wages and interest on those wages from the date of accrual to the date of payment. The judgment of the district court is AFFIRMED.