Gladys MURRAY, for herself and all others similarly situated; consent to become parties plaintiff: Floyd Caskey; Allan Christiansen; Donald Scott; Deborah L. Hoyt; Russell C. Renecker; Eugene A. Rutledge; Lawrence B. Taylor; Warren Kajander; Jeannette (Petrimoulx) Arbuckle; Kinney Bryant; Carol S. Lewis; Harley Blair; Thomas Miller; Sandra L. Crist; Larry Brown; Randy Bushnell; Bobbie Cockrell; Mary T. Cope; Stanley Dixon; Thomas Foster; Edward Geisenheimer; Rae Jean Hamilton; Loren Jacoby; Donald Phillips; Joy M. Powers; Arthur Stotts; David Tompkins, Plaintiffs/Appellees/Cross–Appellants,

Sidney Murray; Christine Christiansen; Roger D. Hoyt; Carol Renecker; Bettye Bryant; James L. Lewis; Joyce Tompkins; Veralyn Blair; Sandra L. Crist, in her capacity as executrix of the estate of Kenneth L. Crist; Rita Miller; Michael

Hamilton; Anna M. Foster; Joni Bushnell; Lois Louise Phillips; Adrienne Geisenheimer; Sharon Jacoby; Bonnie Stotts; Linda M. Brown; Bev Caskey; Michelle Scott; Kevin Murray; Joylene Taylor; William Pohlman; Robert Pohlman; Nancy Pohlman; Robert Kajander; Tony Tompkins; Tracy Tompkins; Georgia Phillips; Tammy Moore; Bonita Dixon; Charles Brown, Plaintiffs,

v.

STUCKEY'S, INC.; Pet, Incorporated, Defendants/Appellants/Cross–Appellees.

Nos. 94–2167, 94–2172.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1994.

Decided March 20, 1995.

Rehearing and Suggestion for Rehearing En Banc April 25, 1995.

John Benton Renick, St. Louis, MO, argued (Gene R. LaSuer and Diane M. Stahle, on the brief), for appellants.

P.L. Nymann, Sioux City, IA, argued (Steven C. Kohl, on the brief), for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges

LOKEN, Circuit Judge.

"Bona fide executive" employees are exempt from the overtime requirements of the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 213(a)(1). In *Murray v. Stuckey's,* *Inc.,* 939 F.2d 614 (8th Cir.1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992) (*Murray I* ), we reversed a damage award in favor of former managers of Stuckey's roadside stores. We held that the district court erred in concluding that the managers did not meet two of the Department of Labor's criteria which define exempt executive employees—having management as their primary duty, and being solely in charge of a physically separated branch establishment. *See* 29 C.F.R. § 541.1(a), (e).

On remand, after again reviewing the record from its non-jury trial, the district court concluded that the managers did not meet two other criteria specified in the regulations—that an exempt executive must regularly supervise two or more other employees and must regularly exercise discretionary powers. *See* 29 C.F.R. § 541.1(b), (d). The court recalculated compensatory and liquidated damages, awarded additional attorney's fees, and entered judgment in favor of the plaintiff managers. Stuckey's, Inc., and its parent, Pet, Incorporated ("Stuckey's"), again appeal, raising a variety of issues. We hold that the managers were exempt executive employees and therefore reverse.

## I. Background.

We will only briefly restate the background facts summarized in *Murray I.* Before it failed, Stuckey's operated combination gas stations, restaurants, and convenience stores, primarily in rural locations on interstate highways. Each store's resident manager was paid a weekly salary plus potential bonuses. If the manager was married, Stuckey's hired the spouse as an hourly employee at just above the minimum wage. Gladys and Sidney Murray are former employees at Stuckey's stores in Randall and Little Sioux, Iowa. On May 30, 1985, the Murrays commenced this action, alleging that Stuckey's had failed to compensate managers and spouses for overtime as required by the FLSA. Other managers and hourly employees filed written consents and joined the suit. *See* 29 U.S.C. § 216(b). Because of the applicable statute of limitations, the case focuses on the three years immediately preceding May 30, 1985, a period in which

Stuckey's was unsuccessfully attempting to turn around its unprofitable operations.

■ The FLSA requires that covered employees be paid 1½ times their regular hourly rate for hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a)(1). This requirement does not apply to "any employee employed in a bona fide executive . . . capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(1). The Secretary first promulgated regulations to "define and delimit" the executive employee exemption in October 1938. *See* Annot., 151 A.L.R. 1089, 1089 n. 1 (1944). The current regulations define an "employee employed in a bona fide executive capacity" as one:

(a) whose "primary duty" consists of the management of a recognized subdivision of the employer's enterprise; and

(b) who "customarily and regularly directs the work of two or more other employees"; and

(c) who "has the authority to hire or fire other employees" or who makes recommendations as to hiring, firing, and promoting that are "given particular weight"; and

(d) who "customarily and regularly exercises discretionary powers"; and

(e) who devotes less than 40 percent of the work week to nonexempt activities, or "is in sole charge of . . . a physically separated branch establishment."

29 C.F.R. § 541.1.[1] In *Murray I*, we resolved the "primary duty" and "sole charge" issues in favor of Stuckey's. Because the managers concede that they had authority to hire and fire other employees, we are now concerned only with criteria (b) and (d), whether the managers "customarily and regularly" supervised at least two other employees and exercised discretionary powers. Stuckey's has the burden of proof regarding these issues. *See Walling v. General Indus. Co.*, 330 U.S. 545, 547–48, 67 S.Ct. 883, 884, 91 L.Ed. 1088 (1947).

## II. Supervising Two or More Employees.

■ Until 1949, the Secretary's regulations required only that an exempt executive employee "customarily and regularly directs the work of other employees." *General Industries*, 330 U.S. at 548 n. 6, 67 S.Ct. at 884 n. 6. That year, without explanation, the Department added the "two or more other employees" language presently found in 29 C.F.R. § 541.1(b). *See* 14 Fed.Reg. 5573, 14 Fed.Reg. 7705, 7706 (1949). A companion regulation clarified that an exempt executive must supervise the equivalent of two or more full-time employees:

**Two or more other employees.**

(a) An employee will qualify as an "executive" under § 541.1 only if he customarily and regularly supervises at least two full-time employees or the equivalent. For example, if the "executive" supervises one full-time and two part-time employees of whom one works mornings and one, afternoons; or four part-time employees, two of whom work mornings and two afternoons, this requirement would be met.

14 Fed.Reg. 7730, 7731–32 (1949), codified at 29 C.F.R. § 541.105(a).

In *Murray I* we commented briefly on the two-employee issue in remanding the store managers' claims to the district court:

The district court did not reach this issue. The evidence included Stuckey's labor budget documents, which appear to reflect that all Stuckey's store managers supervised the equivalent of at least two other full-time employees at all times. Since the district court concluded that these labor budgets understated the labor needed to run the stores, it seems likely that Stuckey's met its burden of proof as to this factor. However, this was a contested issue at trial, and it appears that the district court deferred rulings on the admissibility of other evidence Stuckey's submitted on the question. Under these circumstances,

---

**1.** This is the so-called "long test." Employees who earn at least $250 per week are exempt executives if they meet the first two of these requirements, the so-called "short test." 29 C.F.R. § 541.1(f). Some of the Stuckey's managers fell into each earnings category. The distinction does not affect this appeal.

it would be inappropriate for us to resolve this issue in the first instance.

939 F.2d at 620. On remand, neither side supplemented the trial record, and the district court did not exclude any trial evidence. The court held that Stuckey's failed to meet its burden of proof on this issue because it relied upon an incomplete analysis of payroll records, because there was testimony that only two people ran some low-volume stores in the winter, and because Stuckey's "did not submit direct evidence on the volume of each store." Stuckey's contends that this decision reflects errors of fact and law. Unlike the record before us in *Murray I,* Stuckey's has now provided the full trial record for our consideration of this issue.

There was undisputed trial testimony that Stuckey's hired a new management team in early 1982, the start of the period at issue in this lawsuit. Charged with the task of making Stuckey's profitable, the new Senior Vice President of Store Operations, George Davis, developed new weekly labor schedules for the various stores. These schedules recommended the hours of operation and the work force for each day of the week, taking into account normal customer traffic flows. The schedules recommended a smaller work force for stores with lower sales volumes. In most parts of the country, the schedules also recommended shorter hours of operation and correspondingly reduced labor expense in the winter months, when there is less highway traffic.

In 1982 and 1983, the labor schedule with the *smallest* recommended work force was the October 28, 1982, winter schedule for stores having up to $5,000 per week in total sales. That schedule recommended store hours of 7:00 a.m. to 6:00 p.m., seven days a week, staffed by the manager working sixty hours per week, the manager's spouse working forty hours, and five part-time employees working a total of sixty-seven additional hours per week.[2] In January 1984, Davis circulated a new schedule for stores electing to close on Mondays that winter. It showed

the manager and spouse at sixty and forty hours per week, and three part-time employees at 38–40 hours. By contrast, the January 1984 schedule for small-volume stores remaining open on winter Mondays called for four part-time employees working sixty hours per week in addition to the manager and his or her spouse.

The parties agree that the manager's spouse was an hourly employee supervised by the store manager. Thus, as we noted in *Murray I,* if Davis's labor schedules were followed, all Stuckey's store managers supervised the equivalent of at least two other full-time employees at all times.

Most of plaintiffs' trial evidence was aimed at proving that Davis's labor schedules significantly *understated* the work force needed to operate Stuckey's stores, forcing the managers' spouses to work long hours "off the clock" without overtime pay. All trial witnesses agreed that two employees were needed to operate a store; plaintiffs' witnesses opined that three employees were needed to operate a store properly. At plaintiffs' urging, the district court in its first post-trial decision found "that there were not sufficient hours projected into the labor schedule." Based upon that finding, the court made substantial overtime awards to the hourly plaintiffs, and we affirmed those awards in *Murray I.* On remand, however, the district court simply ignored this essential aspect of the case in addressing the two-or-more-employees issue.

Stuckey's permitted individual store managers to deviate from the labor schedules with the approval of their regional managers. Therefore, in an effort to provide more specific evidence on this issue, Stuckey's analyzed voluminous payroll records from many of the stores at which the plaintiff managers worked during the 1982–1985 period. Anthony Naughton, a Stuckey's accountant, summarized the results of this study at trial. A total of 1454 store weeks were analyzed. In 1428 of those weeks, or 98.2% of the total, the store manager supervised two or more

---

2. It is clear from the regulations that this criterion is met if an employee supervises several part-time employees whose total hours of work are the equivalent of two full-time employees. *See*

29 C.F.R. § 541.105(a); *Marshall v. Hudson Stations, Inc.,* 24 Wage & Hour Cas. (BNA) 260, 1979 WL 1917 (D.Kan.1979).

other employees who worked more than eighty total hours. In eleven of the remaining weeks, the manager supervised two or more employees who worked 75–80 hours. In the remaining fifteen weeks, the manager supervised two or more employees who worked only 61–74 hours.

The district court entirely discounted this study and Naughton's testimony because there were gaps in the records analyzed. But the study included a substantial volume of data, nearly thirty store-years of operations. All Stuckey's stores had closed long before this case was tried, so it is not surprising that complete store records were unavailable. Stuckey's directed this study at stores the plaintiffs had managed. Plaintiffs did not challenge the study's methodology nor impeach Naughton's trial testimony. We conclude that the district court erred in rejecting this highly relevant evidence.

Many plaintiff managers testified briefly on this issue. For example, manager Russell Renecker admitted that he supervised as many as eight or ten employees, and never fewer than two, during the period in question. The district court credited this testimony, but then found, "There were other Russell Reneckers out there but the evidence was not presented to this court." That finding is clearly erroneous. We have read the testimony of the many plaintiff managers who testified by deposition, testimony that was not in the record on appeal in *Murray I.* Fifteen other managers testified that they regularly supervised two or more employees who worked more than eighty hours per week.[3] In most cases, this testimony is confirmed by the Naughton study. The other twelve managers [4] did not testify directly on this issue, but their descriptions of store operating hours and employees supervised, combined with the Naughton study of their stores, support Stuckey's contention that they, too, regularly supervised the equivalent of two or more full-time employees.

The remaining evidence on this issue consisted of testimony that some Stuckey's stores were so unsuccessful that only the manager and spouse worked some days during the winter. Of course, if those stores needed substantial part-time help during busier winter days, the two-full-time-equivalent criterion would still be satisfied. That no doubt explains why Naughton's study refuted some of this testimony. Nonetheless, it is to some extent credible, and Naughton's study confirmed that there were some weeks in which some Stuckey's store managers did not supervise two full-time-equivalent employees. However, for the following reasons, we conclude that this evidence does not refute Stuckey's proof that its store managers "customarily and regularly" met this criterion.

First, as the regulations elsewhere provide, customarily and regularly "signifies a frequency which must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.107(b). We disagree with the comment that "76 percent of the time . . . falls short of 'regular and customary'" in *Secretary of Labor v. Daylight Dairy Prods., Inc.,* 779 F.2d 784, 788 (1st Cir.1985). But in any event, Stuckey's study of a large sample showed that store managers supervised at least two or more employees who worked eighty hours per week 98.2% of the time. That is "customarily and regularly" by any definition.

Second, although forty hours per week is generally the equivalent of a full-time employee, the Department of Labor in applying this regulation recognizes that this is not a rigid standard. Paragraph 22c00 of the Wage and Hour Division, U.S. Department of Labor, *Field Operations Handbook* states in part:

> Two full-time employees or the equivalent within the meaning of Reg 541.105(a) is generally considered to mean 80 hours of work by subordinate employees. . . . Un-

**3.** Harley Blair, Larry Brown, Kinney Bryant, Randy Bushnell, Floyd Caskey, Allan Christiansen, Mary Cope, Thomas Foster, Deborah Hoyt, Warren Kajander, Thomas Miller, Jeannette Arbuckle, Eugene Rutledge, Donald Scott, Lawrence Taylor.

**4.** Gladys Murray, Carol Lewis, Bobbie Cockrell, Sandra Crist, Stanley Dixon, Edward Geisenheimer, Rae Jean Hamilton, Loren Jacoby, Donald Phillips, Joy Powers, Arthur Stotts, and David Tompkins.

usual circumstances might occasionally justify lower standards.... The determination as to whether an employee customarily and regularly supervises other employees within the meaning of Reg 541.1(b) depends on all the facts and circumstances.[5]

In our view, we should not interpret this regulation more rigidly than the Department does in enforcing it. Courts undermine the statute when they construe regulations more inflexibly than the enforcing agency.

Finally, even if the Department considered two full-time equivalent employees an inflexible requirement, we would not rigidly apply it to this case. The Department's only published justification for this rule is the statement in the regulations, "It has been the experience of the divisions that a supervisor of a[s] few as two employees usually performs nonexempt work in excess of the general 20–percent tolerance provided in § 541.1." 29 C.F.R. § 541.105(c). That justification is inapplicable here because employees in sole charge of a physically separate branch establishment, like Stuckey's store managers, are exempt from the twenty-percent requirement. *See* 29 C.F.R. § 541.1(e).

Stuckey's adopted nationwide labor schedules recommending that its managers employ more than two full-time employees per week. Plaintiffs' witnesses testified, and the district court found, that these schedules were, if anything, too lean. The company then fell on hard times and, in the years just prior to its failure, some of the managers testified that they operated small rural stores on a skeletal basis in the winter, rather than closing altogether. In our view, these were unusual circumstances that do not alter the fact that Stuckey's store managers customarily and regularly supervised the work of at least two other full-time equivalent employees. The district court's contrary decision is reversed.

## III. Exercising Discretionary Powers.

■ To qualify for the executive exemption, Stuckey's must prove that its store managers "customarily and regularly exercise[d] discretionary powers." 29 C.F.R. § 541.1(d). The regulations at 29 C.F.R. § 541.107 further refine this criterion:

**Discretionary powers.**

(a) ... A person whose work is so completely routinized that he has no discretion does not qualify for exemption.

(b) The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary powers.

In *Murray I*, we concluded: "Although the record seems clear that store managers ... were 'normally and recurrently ... called upon to exercise ... discretionary powers in the day-to-day performance of [their] duties,' 29 C.F.R. § 541.107(b), we again will remand to the district court for initial consideration of [this issue]." 939 F.2d at 620.

On remand, the district court found that "[w]hat little discretion the managers did exercise on a day-to-day basis was so circumscribed as to be no discretion at all." This finding was based on the testimony of various managers that their authority was limited by company policies and training manuals, by the recommended labor schedules, and by the need to obtain the regional manager's approval to fire an employee, to alter the company-prescribed store inventory, to make repairs costing more than $25.00, and so forth. Thus, concluded the district court, the manager's "work is so completely routinized that he has no discretion" within the meaning of 29 C.F.R. § 541.107(a).

In *Murray I*, we determined that management was the store managers' primary duty and that they were in sole charge of the isolated stores. At one level, therefore, these managers clearly exercised constant

---

5. Counsel included this portion of the Field Operations Handbook in the record on appeal. Inquiring at our request, an Eighth Circuit librarian was told by the Department that the full Handbook is obtainable only by a formal Freedom of Information Act demand.

discretion. They were responsible for the initial handling of any emergency that threatened these significant company assets, such as fire, theft, vandalism, sudden employee absences, and so forth. The fact that such emergencies did not often occur does not justify the district court's complete refusal to recognize this aspect of the managers' responsibilities. An employer such as Stuckey's must have at each physically separate facility one employee with the mandate to exercise discretion to handle such emergencies as part of "the day-to-day performance of his [or her] duties." 29 C.F.R. § 541.107(b).

Even ignoring emergency situations and focusing on more normal day-to-day activities, we conclude that the district court took too cramped a view of what constitutes managerial discretion, resulting in clearly erroneous findings on this issue. Most if not all nationwide companies with multiple outlets establish standardized procedures and policies to guide individual store managers. This practice may circumscribe but it does not eliminate the discretion of the on-site manager of an isolated store who is responsible for day-to-day operations. Similarly, active supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager. *See Donovan v. Waffle House, Inc.,* 26 Wage & Hour Cas. (BNA) 868, 874, 1983 WL 2108 (N.D.Ga.1983); *Marshall v. Sally Beauty Co.,* 25 Wage & Hour Cas. (BNA) 672, 1982 WL 2184 (E.D.La.1982).

In this case, various store managers testified that they hired other employees; scheduled employee work hours; trained and disciplined other employees; ordered store inventories; and handled customer complaints under Stuckey's general "the customer is always right" policy. In considering whether branch store managers were exempt executive employees, the court in *Sally Beauty Co.,* 25 Wage & Hour Cas. (BNA) at 673, 1982 WL 2184, concluded:

> The store manager's position entails a variety of daily administrative and managerial duties. Opening and closing the store falls within the managers' responsibility, in addition to their discretionary functions in scheduling employee hours, customer relations, and ordering merchandise. The exclusive authority to grant discounts and markdowns, extend credit and approve checks, and to resolve customer complaints is vested with the managers. Inventory maintenance and display techniques constitute another aspect of the manager's job. The aforesaid duties thus require the managers to customarily and regularly exercise discretionary powers within the strictures of 29 C.F.R. §§ 541.1(d) and 541.107.

We agree with this interpretation of the regulations. Therefore, the district court's finding that Stuckey's failed to prove that the store managers customarily and regularly exercised discretionary powers is clearly erroneous.

## IV. Conclusion.

The plaintiff store managers were bona fide executive employees exempt from the FLSA's maximum hours provisions. The judgment of the district court in favor of these plaintiffs is reversed and the case is remanded with instructions to dismiss their complaints. The district court's award of attorney's fees is vacated. No fees may be awarded for work on the store managers' claims. Although work on the hourly employees' claims should have been substantially completed prior to our decision in *Murray I,* on remand plaintiffs may petition the district court for an additional fee award if any work that was solely on behalf of the hourly employees was included in the fee award that we now vacate. Plaintiffs' cross appeal is dismissed. The costs of both appeals are taxed in favor of Stuckey's.