Elizabeth **DOLE**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**PAPA GINO'S OF AMERICA, INC.**, Defendant.

Civ. A. No. 88–097–MA.

United States District Court, D. Massachusetts.

May 11, 1989.

Albert H. Ross, Regional Solicitor, and John S. Casler, Atty., for plaintiff Secretary of Labor.

Howard J. Wayne, Eugene R. Richard and Daniel J. O'Connell, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action brought by the Secretary of Labor (the Secretary) to enforce the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1) (FLSA) as they apply to Associate Managers at Papa Gino's. Papa Gino's has moved for summary judgment claiming that the Associate Managers qualify as "bona fide executives" and, as such, are exempt from the overtime wage provisions codified at 29 C.F.R. § 541.1. The Secretary has filed a cross-motion for partial summary judgment on the issue of liability only, claiming that the Associate Managers fail to qualify as "bona fide executives" within the meaning of 29 C.F.R. § 541.1.

The initial question in summary judgment is "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can only be resolved by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making its decision a court may consider the pleadings, depositions, answers to interrogatories and admissions on file together with affidavits and their supporting documents. Fed.R.Civ.P. 56(c) and (e). In addition, Local Rule 18, reflects the Rule 56(e) standard and requires the moving party to make a concise statement of material facts not in dispute with reference to supporting documentation. The opposing party is then required to list those facts in dispute with references to their supporting documentation. Those facts not in dispute are deemed admitted. With these standards and objectives in mind, I present the relevant facts derived from the parties' affidavits. One consistent problem in reviewing the facts of this case has been that while the Secretary has provided detailed affidavits from various Associate Managers, Papa Gino's has provided only affidavits which set out the general policies of Papa Gino's regarding Associate Managers. While these policies are relevant, the issue here turns on Papa Gino's practices with respect to this class of employees.

## II.

Papa Gino's is a Massachusetts corporation engaged in the operation of a chain of approximately 200 Italian restaurants in the New England area and in New York. Each restaurant is staffed by approximately twenty-five to fifty full and part-time employees, including two to five management level employees, depending on the average weekly sales volume of the restaurant. Store management positions include the following four levels, in decreasing order of authority: General Manager, Manager, Assistant Manager, and Associate Manager. Prior to 1987, Papa Gino's referred to Associate Managers as "Manager Trainees."

Papa Gino's hires most of its Associate Managers from outside the Company but occasionally the company will promote a crew member to Associate Manager. After a successful interview, prospective Associate Managers work in a restaurant for thirty hours as a trial period. If both the applicant and Papa Gino's are still interested at the end of this paid trial period, the applicant is accepted into the Papa Gino's management program at the Associate Manager level.

All Associate Managers participate in a training program designed to familiarize them with Company policies and procedures and prepare them for advancement within the company. The training program

consists of one week of classroom orientation at the Company's headquarters in Dedham, Massachusetts, followed by a number of weeks of on-the-job training at one of the restaurants. Associate Managers each receive a workbook/manual containing summary examinations which each Associate Manager must pass in order to progress within the program. Although Associate Managers advance at their own speed, the program is designed to achieve promotion to Assistant Manager around the eleventh week of employment with the Company.

According to the plaintiff, a large majority (70% to 100%) of the Associate Manager's duties involve tasks such as preparing pizzas, sandwiches, salads, and other food, running the cash register, waiting on customers, and cleaning the store.[1] These duties are all performed by regular crew members also. Only two Associate Manager affiants were responsible for opening and closing the store daily, depositing the day's cash receipts, and balancing register tapes to cash deposits, although defendant claims that all Associate Managers are authorized to perform these as soon as they are assigned to a restaurant.[2] Several affiants for plaintiff acknowledge that the purpose of the menial tasks was to "learn by doing".[3] Furthermore, several of Plaintiff's affiant's specifically acknowledge participating in some minimal training activities during their terms as Associate Managers.[4]

Papa Gino's, in an affidavit by its Vice President for Human Resources, asserts generally that it "considers Associate Managers to be a part of management at all times," and that "Associate Managers are told that at all times they should be aware of what crew members are doing." *Whitman Affidavit*, paragraphs 15 and 16. Similarly, it asserts that Associate Managers are lectured on management skills and duties such as interpersonal relations, effective management style, handling customer complaints, company policies, and the company chain of command. *Id.* at paragraph 16. The defendant further claims that Associate Managers are involved in "management activities" such as store inspections, store openings and closings, proper maintenance, and later (weeks six to ten) posting entries on time cards and schedules. *Id.* at paragraph 17.

Each affiant for the plaintiff asserts that he or she performed little or no supervision as an Associate Manager. Again, Papa Gino's claims that by weeks six to ten of the program, Associate Managers "typically identify, rate and communicate proficiency of crew members working on their shifts through what are termed Employee Observation Reports (EOR)." *Whitman Affidavit*, paragraph 18. The defendant further claims that "Associate Managers are at all times responsible for and authorized to discipline and direct crew members, supervise and oversee store operations and handle customer complaints." *Id.* at paragraphs 19 and 20.

There is some dispute over how Associate Managers are compensated. All twenty-two Associate Managers filing affidavits

---

**1.** *Grenier Affidavit*, paragraph 3; *Criss Affidavit*, paragraph 2; *Point Affidavit*, paragraph 2; *St. Jean Affidavit*, paragraph 2; *D'Amico Affidavit*, page 2; *Cabral Affidavit*, paragraph 3; *Law Affidavit*, paragraph 4; *Damon Affidavit*, paragraph 4; *Holland Affidavit*, paragraph 3; *Souza Affidavit*, paragraph 3; *Thurber Affidavit*, paragraph 3; *Devine Affidavit*, paragraph 4; *Carrier Affidavit*, paragraph 5; *King Affidavit*, paragraph 2; *Fiorino Affidavit*, paragraph 6; *Stevens Affidavit*, paragraph 4; *Rawson Affidavit*, paragraph 6; *Sullivan Affidavit*, paragraph 3; *McClendon Affidavit*, paragraph 3; *Salawu Affidavit*, paragraph 6; *McGuire Affidavit*, paragraph 6; and *Marcotte Affidavit*, paragraph 6. *See also Whitman Affidavit*, paragraph 19.

**2.** *Law Affidavit*, paragraph 3; *Damon Affidavit*, paragraph 6. *See also, Whitman Affidavit*, paragraph 17.

**3.** *Grenier Affidavit*, paragraph 3; *D'Amico Affidavit*, paragraph 2; *Damon Affidavit*, paragraphs 6 and 7; *Souza Affidavit*, paragraph 3; *Devine Affidavit*, paragraph 4; *Marcotte Affidavit*, paragraph 7.

**4.** *Criss Affidavit*, paragraph 2; *Point Affidavit*, paragraph 2 (25% of time in training); *Salawu Affidavit*, paragraph 6 ("couple of hours per week" in training); *McGuire Affidavit*, paragraph 7 (three hours per week in training); *Marcotte Affidavit*, paragraph 7 (one hour per week in training).

acknowledged receiving pay in excess of $250 per week ($280 to $455 per week range) during the time period in question. These Associate Managers were paid approximately twenty-five percent more than a comparably experienced crew member working the same amount of hours. *Whitman Affidavit,* paragraph 9. Several Associate Managers claim they did not receive pay on a "salary" basis, but rather that Papa Gino's docked their pay if they worked less than the standard number of hours for salaried employees.[5] In contrast, Papa Gino's asserts that it pays the Associate Managers on a "salary" basis. They allege that they only deduct from the pay of salaried employees for absences caused by sickness or disability before an employee qualifies for the company's sickness and disability plans and again after the employee has exhausted their leave allowance. *Guarino Affidavit,* paragraph 6. Papa Gino's also contends that it does not deduct from a management employee's salary for absences occasioned by the company or by the operating requirements of the business. *Id.* at paragraph 7.

In support of its contention that it is paying employees on a salary basis, Papa Gino's offers a 1982 FLSA narrative from the Department of Labor Compliance Monitor, Edward E. Murphy. *See* Exhibit A in Memorandum in Opposition Plaintiff's Motion for Partial Summary Judgment. However, this narrative is not relevant for the purposes of this motion because in 1982 Papa Gino's was paying Associate Managers overtime pay (one and one-half times

their regular rate) whenever they worked over forty hours in a week. Of course, Papa Gino's admits that this is not the current payment practice. This was also the time period during which they referred to Associates Managers as Manager Trainees.

It is against this factual backdrop that I turn to the applicable law.

### III.

The FLSA requires that employers compensate each employee for his or her hours of work in excess of forty hours per workweek at a rate not less than one and one-half times the regular rate at which he or she is employed. 29 U.S.C.A. § 207(a)(1)[6]. Papa Gino's claims that its Associate Managers are "employees employed in a bona fide executive capacity," and as such are exempt from the overtime pay requirements. 29 U.S.C.A. § 213(a)(1).[7]

The defendant bears the burden of proving that the exemption applies to its Associate Managers. *Secretary of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784, 787–88 (1st Cir.1985); *Wirtz v. C & P Shoe Corp.,* 336 F.2d 21 (5th Cir.1964). As all of the Associate Managers earned over $250 per week during the period in question, Papa Gino's must show only that the Associate Managers satisfy two criteria to qualify for the "bona fide executive" exemption: they have management as their primary duty and they customarily and regularly supervise the work of two or more other employees. 29 C.F.R. § 541.1[8]; *Secretary*

---

**5.** *Grenier Affidavit,* paragraph 2; *Point Affidavit,* paragraph 3; *D'Amico Affidavit,* page 2; *Devine Affidavit,* paragraph 7; *King Affidavit,* paragraph 5; *Stevens Affidavit,* paragraph 5; *Sullivan Affidavit,* paragraph 5; and *Salawu Affidavit,* paragraph 3.

**6.** 29 U.S.C.A. Section 207(a)(1) reads as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

**7.** 29 U.S.C.A. Section 213(a) states in pertinent part: "The provisions of ... section 207 of this title shall not apply with respect to—(1) any employee employed in a bona fide executive, administrative, or professional capacity....."

**8.** 29 C.F.R. 541.1 reads, in pertinent part: "... an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other

*of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784 (1st Cir.1985); *Donovan v. Burger King,* 672 F.2d 221 (1st Cir.1982).

There is one further applicable regulation. Management trainees are explicitly excluded from the bona fide executive exemption. C.F.R. § 541.116 reads:

> "The exemption is applicable to an employee employed in a bona fide executive capacity and does not include employees training to become executives and not actually performing the duties of an executive."

■ After consideration of the extensive factual record submitted by the plaintiffs through the detailed affidavits of Associate Managers, a record which is not controverted by the defendant except in broad assertions of policy and purposes, I conclude that Papa Gino's Associate Managers fit within this exception to the exemption.

First, the position of Associate Manager is, as defendant describes it, only an entry level, temporary position, lasting approximately eleven weeks. *See Whitman Affidavit,* paragraph 14. Secondly, the Associate Managers must master and maintain a training manual containing several examinations which each Associate Manager must pass prior to advancement. *Id.* Thus, if the Associate Manager does not pass the examinations, they are by definition, lacking the minimal knowledge necessary to manage the crew. Although it is not dispositive, it is also significant that even Papa Gino's referred to the Associate Managers as "Manager Trainees" just prior to the inception of this litigation. *Id.* at paragraph 8. Most importantly, C.F.R. 541.116 highlights the fact that to be a bona fide executive you must *actually perform* the duties of an executive. The defendant has failed to allege or show that the Associate Managers actually perform executive duties, but instead only states allegations and policies as to authorized duties. Mere allegations are insufficient to survive a motion for summary judgment. Fed.R.Civ.P. 56(e). On the other hand, plaintiff provides substantial evidence to show that the Associate Managers almost exclusively performed crew member duties; only two affiants performed any type of executive duties. If the purpose of doing crew member work was to merely "learn by doing", this only supports the contention that these employees are really training to be executives.

■ Even if the Associate Managers were not trainees within the meaning of 29 C.F.R. 541.116, the defendant would still have to demonstrate that the Associate Managers had management as their primary duty and that they customarily and regularly supervised the work of two or more employees. 29 C.F.R. § 541.1. When an employee makes over $250 a week this standard is called the "short test." *See, e.g., Burger King* at 223.

The plaintiffs allege that the defendant must prove the Associate Managers meet these criteria during each workweek in question. *Daylight Dairy Products, Inc.,* 779 F.2d at 786–87. The defendants, however, claim this "workweek standard" is not applicable to employees under the "short test" and as such does not apply to the Associate Managers. *See Marshall v. Western Union Tel. Co.,* 621 F.2d 1246 (3rd Cir.1980). The defendant argues that a "holistic approach" is appropriate, meaning that the "overall nature of the job" is determinative rather than the precise percentage of time involved in any particular type of work. *Stein v. J.C. Penney Co.,* 557 F.Supp. 398, 404 (W.D.Tenn.1983), citing *inter alia Donovan v. Burger King,* 672 F.2d 221 (1st Cir.1982). The First Circuit has explicitly rejected the application of specific time percentage tests in determining whether management is an employee's primary duty under the short test. *Burger King,* 672 F.2d at 226. *But see Daylight Dairy Products, Inc.,* 779 F.2d at 787 (the workweek standard is applicable when evaluating employees under the long test). However, as I discuss later in this opinion, a weekly analysis is necessary to determine if the Associate Managers "customarily and regularly" supervise two or more employees. *See* 29 C.F.R. § 541.105.

employees therein, shall be deemed to meet all the requirements of this section."

Applying these standards, I now address each of the plaintiff's claims.

The test for determining whether management is a primary duty was spelled out in the *Burger King* case:

> A determination of whether an employee has management as his primary duty must be based on all the facts of a particular case ... Time alone ... is not the sole test ... [Other] pertinent factors are relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the wages paid other employees for the kind of non-exempt work performed by the supervisor.

672 F.2d 221 at 225 (quoting 29 C.F.R. § 541.103). Furthermore, in the First Circuit, "primary duty" is given its natural reading of "principal" or "chief" duty, and is not held to a formalistic rule of whether the employee spends over 50% of his or her time managing. *Id.* at 226. An employee can manage while performing other work, and this other work does not negate the possibility that the employee's primary duty is management. *Id.*

Plaintiffs, through their affidavits, unanimously assert that they spend little or no time performing "managerial" activities. Even if their time spent making pizzas, cleaning, running cash register, opening and closing stores was in an effort to "learn by doing," this would still not constitute management activity, but would rather qualify as training activity under 29 C.F.R. § 541.116. The defendant fails to place plaintiffs' contentions in dispute by its sweeping allegations regarding the "authorized" duties of the Associate Managers. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed. 2d 202 (1986). Although the defendant states that Associate Managers are told early on "that they should always be aware of what crew members are doing, to anticipate problems and their solutions and to facilitate the smooth and efficient operation of the restaurant in any way possible," this does not show that the Associate Man-

agers actually do perform these tasks. *Whitman Affidavit*, paragraph 16.

Although Papa Gino's contends that once assigned to a restaurant (approximately week two), the Associate Managers are immediately involved in "management activities," such as store inspections, store openings and closings, and proper maintenance, the defendant fails to provide any detail as to the level of the Associate Managers' participation or the amount of time these Associate Managers spend performing these activities. Again, defendant asserts that the Associate Managers perform additional management activities such as posting entries on time cards and schedules, but makes no reference to the amount of time spent in these activities which sound more clerical than managerial in nature. Similarly, the defendant's claim that Associate Managers "typically" rate crew members through Employee Observation Reports does not address what is actually happening in the restaurants. *Whitman Affidavit*, paragraph 18. The defendant fails to assert specifically that *these* Associate Managers, or any other Associate Managers, ever performed any of the authorized activities.

Papa Gino's is correct in asserting that chain restaurants are routinized to the point of requiring minimum oversight for internal operations. Managers on the scene performing largely non-exempt tasks nevertheless may still have management as their primary duty. *Burger King*, 672 F.2d at 226. However, the defendant's reliance on *Burger King* here is misplaced. The *Burger King* court's finding that the Assistant Managers had management as their primary duty expressly relied on the district court's finding that the Assistant Managers were "in charge" of the restaurant during their shifts. *Id.* at 227. The Burger King court ruled that an employee "in charge" of a store by definition has management as his or her primary duty. *Burger King* citing *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877 (W.D.Pa.1975) (employee "in charge" of a drug store has management as her primary duty despite spending over 50% of her time as the sole sales clerk in two of the departments).

Papa Gino's makes no claim that the Associate Managers are at any time in charge of the restaurant. Similarly, only three of the Associate Managers ever supervised a shift, and those experiences were limited to one or two shifts per week only in the last few weeks of their training period.[9] Although "in charge" status is not an absolute prerequisite to having management as the primary duty, it clearly lessens the need for other persuasive factors.

After assessing the other pertinent factors to be considered in determining if an employee has management as his or her primary duty, I find the Associate Managers do not meet this criteria. The relative importance of the managerial duties (opening and closing store, posting time cards, etc.) is minimal compared to the other types of the Associate Manager's duties. Also, plaintiffs unanimously assert in their affidavits that they never exerted discretionary power. The defendant simply claims that Associate Managers are authorized to exert discretionary power. Mere authorization is not the issue. With the exception of four affiants, the Associate Managers claim that they were never without direct on-site supervision. Thus, in evaluating all of the factors as part of a "holistic" approach, Papa Gino's has failed to rebut the presumption that the Associate Managers do not have management as their primary duty.

Under the "short test," Papa Gino's must also show that the Associate Managers' duties include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1(f). The Secretary's regulations explicitly state that "an employee will qualify as an 'executive' under 29 C.F.R. § 541.1 only if he customarily and regularly supervises at least two full-time employees or the equivalent." 29 C.F.R. § 541.105. In the First Circuit, supervision of two full-time employees work-

ing forty-hour weeks is equivalent to supervision of any number of part-time employees, as long as the total number of hours supervised exceeds eighty. *Secretary of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784, 787 (1st Cir.1985) (citing Department of Labor Field Operations Handbook). Although *Daylight Dairy* involved an application of the "long test," where employees earn between $155 and $250 a week, interpretation C.F.R. of § 541.105 is explicitly a prerequisite to the bona fide executive exemption. That is, 29 C.F.R. 541.105 does not only apply to the long test; I find that this eighty person-hour rule applies to the short test as well as the long test. *But see Marshall v. Western Union Tel. Co.,* 621 F.2d 1246, 1251 (3rd Cir.1980) (workweek standard inapplicable to short test employees).

Applying this eighty person-hour workweek standard, Papa Gino's clearly fails to show that the Associate Managers regularly and customarily direct the work of two or more other employees. Nearly all of the plaintiff's affiants who acknowledged performing some supervisory activities indicated that they supervised on a very limited basis and only in the last few weeks of the training period.[10] The defendant fails to sufficiently dispute this insignificant level of supervision. The only real assertion defendant offers is a restatement of the requirement itself: "Associate Managers are authorized to supervise crew members. Their duties include the customary and regular direction of the work of two or more other employees." *Whitman Affidavit,* paragraph 21. The authorization of Associate Managers to supervise is not controlling. The issue hinges on what supervisory activities the Associate Managers are actually performing. The defendant has failed to make any specific statements as to the number of hours the Associate Managers spend supervising each week, or even a more general description of the amount of

---

**9.** *See Cabral Affidavit,* paragraph 5; *Law Affidavit,* paragraph 5; *Damon Affidavit,* paragraph 9; *McGuire Affidavit,* paragraph 4.

**10.** *King Affidavit,* paragraph (started to have some supervisory duty in fifth week, didn't have full supervisory duties until promoted to Assist-

ant Manager); *Stevens Affidavit,* paragraph (started some supervisory duties in week eight); *Rawson Affidavit,* paragraph (started to have some supervisory duties in seventh month); *Sullivan Affidavit,* paragraph 2 (started to have some supervisory duties in week ten).

supervision or the amount of time that the Associate Managers are in charge of a shift.[11] The defendant's allegation that some Associate Managers limited their supervisory authority over crew members because of their lack of experience supports plaintiff's underlying argument that Associate Managers are too inexperienced to supervise other employees. *See* Defendant's Memorandum of Reasons in Opposition to Plaintiff's Motion for Partial Summary Judgment, p. 2. The defendant's failure to provide a detailed description of the Associate Manager's supervisory activities results in its failure to meet its burden of proof for this prong of the exemption test.[12]

In summary, Papa Gino has not controverted the specific, detailed facts set out in the various affidavits which show exactly what duties this class of employees actually performed in their employment activity. The employment activity was one of training to be managers, but was not management nor supervision. Accordingly, Papa Gino having failed to meet its burden of proof that its Associate Managers have management as their primary duty or that they customarily and regularly supervise the work of two or more other employees, the plaintiff's Motion for Partial Summary Judgment will be granted. Defendant's Motion for Summary Judgment is denied. Counsel shall report to the court on any further proceedings necessary to the computation of damages.

SO ORDERED.

---

**11.** The interpretations on point explicitly state that "A shared responsibility for the supervision of the same two or more employees in the same department does not satisfy the requirement that the employee 'customarily and regularly directs the work of two or more employees therein.'" C.F.R. section 541.105(e).

**12.** I note, however, that even if I applied the defendant's "holistic" approach rather than the 80 person-hour workweek standard, the defendant would still fail to pass this supervision requirement of the short test. Papa Gino's failed to assert any detailed facts sufficient to pass even this lower threshold.