**Jesus Rafael RODRIGUEZ RODRIGUEZ, Plaintiff,**

v.

**IBERIA LINEAS AEREAS de ESPANA, Defendant.**

**Civil No. 94–2181.**

United States District Court, D. Puerto Rico.

April 22, 1996.

Alberto Acevedo–Colon, Ramos, Muniz & Ramos–Camara, Condado, PR, for plaintiff.

James D. Noel, Ledesma, Palou & Miranda, Hato Rey, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff brought an overtime[1] claim seeking compensation for work performed during overtime, mealtime, and the weekly day of rest under Puerto Rico's (1) Act No. 379 of May 15, 1948, as amended, P.R.Laws Ann. tit. 29, §§ 273–274, 282–283 (1985 & 1991 Supp.) (hereinafter "Working and Hours Days Act" or "the Acts") and (2) Act No. 289 of April 9, 1946, as amended, P.R.Laws Ann. tit. 29, §§ 295, 298 (1985) (hereinafter "Seventh Day Act" or "the Acts").

On November 8, 1995, the Court began a three day bench trial to determine whether Plaintiff qualified as an "administrator" and/or an "executive" and, therefore, was exempt from the protective provisions of the Acts. After listening carefully to the evidence and analyzing the parties' respective memorandums of law, the Court finds that Plaintiff meets the requirements of the short-tests for both an "administrator" and an "executive" of Iberia Lineas Aereas de España at the Luis Muñoz Marín International Airport between January 1, 1984 and June 24, 1991. **(Dkt. Nos. 23, 24, 25, 27).** Consequently, Plaintiff can not seek compensation for work performed during overtime, meals, and the weekly day of rest, and his complaint is hereby dismissed.

## FINDINGS OF FACT

From January 1, 1984 until June 24, 1991, Plaintiff, Jesus Rafael Rodriguez Rodriguez ("Rodriguez"), worked for Defendant, Iberia Lineas Aereas de España ("Iberia"), at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico. During this seven year period, Plaintiff labored under two distinct titles. The overwhelming majority of the time Plaintiff worked as the "Traffic Manager" ("Jefe de Servicio de Tráfico"), also known as the "Head of the Shift for Traffic Services" ("Jefe Turno Servicio Tráfico"). Frequently, however, when the Station Manager, otherwise known as the Airport Manager, was absent from the airport, Plaintiff would perform many of the Station Manager's duties as the Acting Station Manager. Iberia compensated Plaintiff with a monthly salary that began at $3,601 per month in January 1984 ($831.00 per week) and ended with a salary of $4,738 per month in June 1991 ($1,093.38 per week).[2]

There were at least six individuals working for Iberia in Puerto Rico that held powerful positions above Plaintiff. The General Manager held the highest position in Puerto Rico and oversaw the work of five executives who ran their respective departments: the sales manager, the administrator, the maintenance manager, the operations manager, and the station manager. These five individuals and the General Manager were known as the "Mandos" or the Commanders.[3] In the hierarchy of Iberia, Plaintiff stood directly below the station manager who oversaw the cater-

---

**1.** Under Act No. 379 and Act No. 289, overtime includes the hours worked in excess of an eight hour work day, hours worked in excess of forty during any week, hours worked when the business must remained closed by law, hours worked during the weekly day of rest, and hours worked during the mealtime period. *See* P.R.Laws Ann. tit. 29, § 273 (1985).

**2.** *See* PreTrial Order, Dkt. No. 13, Statement of Uncontested Material Facts, Part III, 1–2.

**3.** Both parties discuss repetitively whether Plaintiff was one of the Mandos. The Court, however,

shall not expend its time determining whether Plaintiff was a Mando. The nature of Plaintiff's position and the functions he performed during the seven year period in question are more important than the title that Iberia conferred upon him. *See Medina Vega v. Unión Obreros Cervecería Corona*, 86 P.R.R. 609, 614–17 (1962); *see also* 29 C.F.R. § 541.201(b) (1995) (explaining that job titles are insufficient yardsticks to measure an employee's status and functions); *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1075 (1st Cir.1995) (exemption depends on the employee's functions and not the job title).

ing department and the passengers department. During most of Plaintiff's seven year tour of duty as the Traffic Manager, he shared the position with a second individual. While this individual worked the night shift, Plaintiff worked most often during the day.

Five witnesses at the hearing testified about Plaintiff's functions at the airport. Three individuals who worked for Iberia while Plaintiff was Traffic Manager testified on behalf of Iberia: (1) Francisco Duarte Gomez ("Duarte") who was Iberia's Station Manager and Plaintiff's supervisor from July 1986 until December 1989;[4] (2) Vicente Alos Cerra ("Alos") who was a passenger supervisor for Iberia in 1985 and thereafter an employee of the handling companies working under Plaintiff's supervision;[5] and (3) Sandra Rosa Medina ("Medina") who was an administration agent in charge of Iberia's accounting in Puerto Rico from 1984 to 1991.[6] Two witnesses, Plaintiff himself and a former Executive Secretary to the Station Manager, Maria de Los Angeles Pagues Cahue ("Pagues"), testified for Plaintiff.

Although all five did not agree on every aspect of Plaintiff's position, from the evidence presented it is evident that Plaintiff performed several essential functions for Iberia. Perhaps Plaintiff's most important function was his supervision of Iberia's airport employees from 1984 until 1985. After 1985, when Iberia hired independent contractors to perform a variety of functions at the airport, Plaintiff oversaw the operations of these handling companies and their employees.

As supervisor, Plaintiff was responsible for three noteworthy tasks. First, Plaintiff had input into the hourly schedule of the employees at the airport. For example, when airplanes arrived late, Plaintiff would extend their work shifts to accommodate the passengers.[7] Second, Plaintiff directed the work of the employees and independent contractors working for Iberia at the airport. When employees made mistakes, Plaintiff would correct them and report their errors to his superiors.[8] When Plaintiff worked side by side with employees at the Iberia counters, he would remind them of their duties and direct their efforts to accommodate the passengers.[9]

Third, and most importantly, Plaintiff had influence over the hiring and firing of employees. Although Plaintiff did not have the power to hire or to fire an employee at his discretion, the evidence indicates that Plaintiff did have the power to make an influential recommendation about the status of an employee's position with the company.[10] In fact, Duarte testified that as Station Manager he followed Plaintiff's advice regarding the number of new employees needed and the work status of an employee ninety percent (90%) of the time. Given the Station Manager's frequent absence from the airport and the fact that Plaintiff had daily contact with Iberia's employees and independent contractors, Duarte's choice to follow Plaintiff's advice makes perfect sense.

For example, during Plaintiff's tenure as Traffic Manager, an employee of a handling company working for Iberia allegedly misbehaved. Although Plaintiff was not present, the handling company's supervisors reported the incident to Plaintiff. In turn, Plaintiff apparently reported the incident to his superiors with a recommendation that the company reprimand the employee. Although Plaintiff denies any involvement in the firing of this employee, his comments indicate that he had the responsibility of preventing the

---

4. Tr. of Hearing, Dkt. No. 24, 10–11 (hereinafter "Tr.").

5. *Id.* at 77–78.

6. *Id.* at 101–102.

7. Rodriguez Dep., Dkt. No. 18, Joint Ex. I at 26; Tr. at 62.

8. Alos Test., Tr. at 93; Medina Test., Tr. at 115; Rodriguez Test., Tr. at 206–207; Rodriguez Dep., Dkt. No. 18, Joint Ex. I at 18, 28.

9. Medina Test., Tr. at 115.

10. Pl.'s Memo., Dkt. No. 25, at 43. Plaintiff admits that he made recommendations that Iberia fire and hire certain people. He argues, however, that these recommendations are insignificant because any Iberia employee could make similar suggestions to their superiors.

employee from creating a future disruption at the airport.[11] Plaintiff states: "the situation was so serious that regarding whether I could or couldn't [reprimand her] . . . I would have borne the responsibility anyway of . . . forbidding her to enter [Iberia's offices]." [12] Undoubtedly, Plaintiff's responsibilities included making reports of any similar incidents and making a recommendation as to the penalty for an employee's wrongful behavior.

In addition to supervising and coordinating the airport workers, Plaintiff acted as an assistant to the Station Manager and as Acting Station Manager when the Station Manager was absent from the Luis Muñoz Marín International Airport. As the Station Manager's assistant, Plaintiff had the authority to pass down orders from the Station Manager to the lower-level employees. When Plaintiff talked to these employees, he instructed them with the full power and authority of Iberia behind him.[13] Furthermore, Plaintiff signed many invoices as Traffic Manager. Sometimes Plaintiff would be the only individual to sign the invoice and, at other times, the Station Manager would sign the invoice after Plaintiff. The invoices listed the expenditures that various companies charged to Iberia for a variety of goods and services. Before signing the invoice, Plaintiff would carefully examine the expenditures and correct any errors.[14] By signing the invoice, Plaintiff indicated that, as Traffic Manager, he approved of the expenditures.

Frequently, the Station Manager was absent from the airport for both business and personal reasons during Plaintiff's work shift.

Because Plaintiff was the most senior Traffic Manager, he would assume all the duties and the responsibilities of the Station Manager.[15] This included: (1) correcting and approving of the invoices that billed Iberia for goods and services by signing his name "by authorization" of the Station Manager; [16] (2) approving the distribution of meals by the catering company; [17] (3) authorizing overtime for employees; [18] and (4) authorizing days off and vacation leave.[19] Plaintiff performed these functions as Acting Station Manager at least fifty (50) days every year.[20]

As both Traffic Manager and Acting Station Manager, Plaintiff represented Iberia in company meetings and criminal cases. In meetings with the Puerto Rico Ports Authority, which has jurisdiction over the Luis Muñoz Marín International Airport, and other companies, Plaintiff would be present. Although it is unclear whether Plaintiff's role at these meetings was to listen attentively to instructions, make recommendations, or answer questions, the record shows that he would attend meetings at the airport and Iberia's offices in Miramar, Puerto Rico.[21] Furthermore, Iberia's Mandos often called upon Plaintiff to represent the company in criminal cases.[22]

In Plaintiff's position as Traffic Manager, Plaintiff performed both manual labor and office work. According to Plaintiff himself, he spent the overwhelming majority of his time doing office work. In an eight hour work day, Plaintiff would spend anywhere from the entire day to five hours of the day working at the office or on non-manual

11. Duarte Test., Tr. at 71; Rodriguez Test., Tr. at 212–214, 244.

12. Rodriguez Test., Tr. at 244.

13. Rodriguez Dep., Dkt. No. 18, Joint Ex. I at 18; Duarte Test., Tr. at 12, 28.

14. Rodriguez Test., Tr. at 279, 318–319; Def.'s Exs. Z, AA, BB, CC, DD, EE, GG, HH, II, JJ, KK, LL, MM, NN, OO.

15. Rodriguez Test., Tr. at 165; Def.'s Ex. B; Duarte Test., Tr. at 15, 28; Medina Test., Tr. at 107.

16. Rodriguez Test., Tr. at 263–264.

17. Alos Test., Tr. at 81.

18. Alos Test., Tr. at 81–83; Rodriguez Test., Tr. at 207–208; Duarte Test., Tr. at 62–64, 83.

19. Rodriguez Test., Tr. at 236; Def.'s Exs. K, L, M, N, O, P, Q.

20. Rodriguez Test., Tr. at 221; Medina Test., Tr. at 109.

21. Duarte Test., Tr. at 13; Medina Test., Tr. at 107.

22. Rodriguez Test., Tr. at 175.

tasks.[23] The office work included: (1) informing companies, the Puerto Rico Ports Authority, and airport offices of the flight schedules; [24] (2) dictating reports on employee absences and dictating letters requesting supplies; [25] (3) approving overtime; (4) approving invoices from the catering services company, the airport aviation services company, the airport stores, various business supply companies, airport limousine services, land transportation services, and magazine companies; (4) authorizing vacation leave, overtime, and compensatory days; [26] (5) authorizing the payment of hotel bills for Iberia employees; [27] (6) ordering the purchase of new materials; [28] (7) ordering the disbursement of petty cash; [29] (8) authorizing compensation for lost luggage; [30] (9) correcting telephone bills and charging employees for their personal use of the telephone; [31] (10) attending Iberia meetings; (11) representing Iberia in criminal cases; and (12) supervising and coordinating the activities of the Iberia employees and independent contractors at the airport. Plaintiff carried out the bulk of these activities at the Traffic Manager's desk and he shared a secretary with the Station Manager.[32]

In spite of the fact that Plaintiff's occupation centered around office work, Plaintiff did spend some time performing manual labor on a daily basis. During the day, Plaintiff worked at the customs area, the immigration area, the transit room, the ramp, and the Iberia counters doing the work that other lower-level Iberia employees and independent contractors performed.[33] Each day, according to Plaintiff, he would check in thirty (30) passengers.[34] Moreover, he would check in passenger luggage, help the passengers on wheelchairs, clean the offices, bring mail to Iberia's headquarters in Miramar, and transport sick passengers to the hospital.[35]

Plaintiff's position had a significant impact on Iberia's public image and business success. He was one of Iberia's most important managers of goods and services which had a direct effect upon Iberia's most important clientele, the passengers. All three of Iberia's witnesses, Duarte, Alos, and Medina, as well as Plaintiff himself, testified about the importance of his work.[36] As Traffic Manager and Acting Station Manager at the airport, Plaintiff had to make decisions frequently about the boarding status of a passenger. Plaintiff, for example, had the authority to admit or to deny passengers the right to board an airplane, upgrade passengers from "coach" to "first class," and approve of "denied boarding" compensation.[37] Plaintiff maintained such a distinguished and helpful relationship with the public that he was rewarded two times with the "Best Airline Traffic—Airport Employee" of the year award by the Puerto Rico Association of Travel Agents.[38]

Plaintiff's responsibilities and title placed him in a separate and distinct class of Iberia employees. On the highest level were the

**23.** Rodriguez Dep., Dkt. No. 18, Joint. Ex. I at 48.

**24.** Duarte Test., Tr. at 24; Medina Test., Tr. at 103–105.

**25.** *Id.*

**26.** Rodriguez Test., Tr. at 274–331; Def.'s Ex. X—WW.

**27.** Rodriguez Test., Tr. at 309–310; Def.'s Ex. QQ, T.

**28.** Rodriguez Test., Tr. at 324; Def.'s Ex. SS.

**29.** Rodriguez Test., Tr. at 325; Def.'s Ex. TT.

**30.** Rodriguez Test., Tr. at 330; Def.'s Ex. VV.

**31.** Rodriguez Test., Tr. at 331; Def.'s Ex. WW.

**32.** Duarte Test., Tr. at 21–22.

**33.** Rodriguez Test., Tr. at 142–143.

**34.** *Id.* at 218.

**35.** Rodriguez Dep., Dkt. No. 18, Joint Ex. I at 34–35; Rodriguez Test., Tr. at 223–224.

**36.** Duarte Test., Tr. at 14; Alos Test., Tr. at 87; Medina Test., Tr. at 113; Rodriguez Test., Tr. at 199–201.

**37.** Duarte Test., Tr. at 12, 15, 55–56, 65–66, 74; Rodriguez Test., Tr. at 255–56.

**38.** Rodriguez Test., Tr. at 199–201; Pl.'s Exs. 2, 4. Plaintiff argues that only non-administrators and non-executives can receive this award. There is no evidentiary support, however, for this conclusory assertion.

Mandos who worked in powerful positions directly above Plaintiff. On the lowest level were those employees working directly below Plaintiff: (1) Iberia's employees at the counter section, the customs area, the immigration area, the ramp, and the transit room; and (2) the independent contractors who replaced most of them in 1985. Between these two levels, there was a middle tier where Plaintiff, the other Traffic Managers, the Traffic Coordinators (who coordinated the Station Manager's orders and were in charge of the meals department), and the Operations Department Coordinators worked.

Iberia treated the workers in this middle tier, like Plaintiff, differently from the remaining airport employees. The middle level employees, unlike the lower level employees, had a different hourly schedule and holiday schedule.[39] They did not receive overtime compensation but, instead, received more compensation or more days off for the additional hours that they worked.[40] None of these employees, including Plaintiff, recorded their working hours by punching time cards. Rather, they reported their hourly schedule by filling out attendance sheets.[41] Furthermore, Plaintiff along with the other Traffic Managers had to wear a double breasted jacket that distinguished them from both higher executives and lower level employees.[42]

In summary, Plaintiff was the second most important Iberia employee at the Luis Muñoz Marín International Airport from January 1, 1984 until June 24, 1991. He was the most senior Traffic Manager and the individual most likely to assume the duties of the Station Manager when the Station Manager was absent from the airport. His most sig-

nificant functions included: (1) supervising the lower level Iberia employees and the independent contractors; (2) approving business expenditures, overtime, and vacation leave while assisting and substituting the Station Manager; (3) attending company meetings and representing Iberia in criminal cases; and (4) performing office work which directly affected Iberia's business operations. He performed these tasks with the highest distinction and with such an unusual dedication that Iberia relied on his expertise and experience at the airport for many years.

## LEGAL DISCUSSION

### A. The Meaning of "Administrator" and "Executive"

Iberia asserts that Plaintiff was an "administrator" and/or an "executive" of the company from January 1, 1984 until June 24, 1991 and, therefore, exempt from the protective provisions of Puerto Rico's Working and Hours Days Act and the Seventh Day Act. The Acts require, *inter alia*, employers to pay overtime wages for all hours worked in excess of an eight hour work day, the hours worked during the weekly day of rest, and the hours worked during mealtime. The Acts, however, do not protect executives, administrators, and professionals as those terms are defined by the Puerto Rico Minimum Wage Board. P.R. Laws Ann. tit. 29, §§ 288, 299 (1985).[43]

■ The Puerto Rico Minimum Wage Board recently amended the definition of "administrator" and "executive" for the fourth time in Regulation Number 13 (Fourth Revision) (1990). For each defini-

---

**39.** Rodriguez Test., Tr. at 209–10.

**40.** *Id.*

**41.** *Id.* at 191–193, 209–11, 254, 290–91.

**42.** Duarte Test., Tr. at 49–51; Rodriguez Test., Tr. at 187, 353; Pagues Test., Tr. at 384.

**43.** Plaintiff is not seeking compensation under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et. seq. and, therefore, the federal statute's two-year statute of limitations and three-year statute of limitations for willful violations is inapplicable. *See Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1079–80 (1st Cir.1995).

Under Puerto Rico law, Plaintiff filed a timely complaint on September 2, 1994 within three years after terminating his employment relationship with Iberia on December 31, 1993. *See* Act No. 96 of June 26, 1956, as amended, P.R.Laws Ann. tit. 29, § 246d(a) (1985); *Nazario v. Joyería Gordons, Inc.,* 99 P.R.R. 575, 576 (1971). Furthermore, Plaintiff is seeking appropriately compensation within the ten year period immediately preceding the termination of his employment relationship with Iberia: from January 1, 1984 until June 24, 1991. *See* Act No. 96 of June 26, 1956, as amended, P.R.Laws Ann. tit. 29, § 246d(c) (1985).

tion there are two tests: (1) the "long test" for those employees earning less than $295.00 per week exclusive of board, lodging, or other facilities which has five requirements for "administrators" and six requirements for "executives; and (2) the "short test" for those employees earning at least $295.00 per week exclusive of board, lodging and other facilities which has only two requirements for both "administrators" and "executives." Because Plaintiff was compensated at least $831.00 per week exclusive of board, lodging and other facilities, Iberia must only satisfy the shortened requirements under the definition of "administrator" or "executive" to defeat Plaintiff's claims.

Under the short test for "administrators," Iberia has the burden of establishing that: (1) Plaintiff performed office or non-manual work directly related to (a) management policies, (b) Iberia's general business operations, or (c) Iberia's customers; and (2) Plaintiff customarily and regularly exercised discretion and independent judgment. Article III, Regulation 13, P.R. Minimum Wage Board (Fourth Revision), approved June 26, 1990.

The first prong of the test focuses on the employee's non-manual tasks. Such tasks as supervising other workers, attending to the needs of clients, collecting and receiving payments for services, coordinating with other businesses, maintaining and purchasing supplies, and using a petty cash fund are examples of office work related to management policies, business operations, and customers. *Lehman v. Ehret, Inc.,* 103 D.P.R. 264, 103 English Translations 364, 370–71 (1975). According to the interpretations of the Federal Regulations governing the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et. seq. which are almost identical to the Minimum Wage Board regulations and considered persuasive authority by Puerto Rico courts, this part of the test is designed to exempt "white-collar" employees who expend a significant amount of time performing office work. 29 C.F.R. § 541.203 (1995); *White v. All America Cable & Radio,* 656 F.Supp. 1168, 1170 (D.P.R.1987); *López Vega v. F. Vega Otero, Inc.,* 103 D.P.R. 175, 103 English Translations 243, 246–47 (1974). Employees who perform manual work may still come within

the exemption for administrative employees. 29 C.F.R. § 541.203 (1995).

Furthermore, the office work must be "directly related" to management policies, general business operations, or the employer's customers. In other words, the work must be substantially important to the administrative operations of the business. The employee does not have to help formulate management policies or help operate the entire business. Rather, the employee may carry out and execute policies which have a substantial impact upon a segment of the business. A finding that the employee performed office work of substantial importance to the business is not contingent on the number of other employees carrying out these same tasks. So long as the employee's tasks fits within these parameters the employee satisfies this part of the test. 29 C.F.R. § 541.205 (1995); *Reich v. Haemonetics Corp.,* 907 F.Supp. 512, 516–17 (D.Mass. 1995).

The second prong of the "administrator" short test focuses on whether the employee customarily and regularly exercised discretion and independent judgment in the performance of his or her tasks. In general, an employee that has the authority "to make an independent choice, free from immediate direction and supervision and with respect to matters of significance" fits within the test. 29 C.F.R. § 541.207 (1995); *Reich,* 907 F.Supp. at 518. The employee must not be merely applying his knowledge and skill to prescribed procedures but rather exercising independent thought in selecting a choice between several permitted options. 29 C.F.R. § 541.207 (1995). Moreover, routine, clerical decisions, although requiring some discretion, are not the kinds of tasks that the regulation has in mind. Instead, the decisions must either involve choosing which policies to follow within the employee's sphere of responsibility or affect the employer's financial condition in a substantial manner. *Id.* Furthermore, the employee does not have to make the final decision in order to be considered exercising independent judgment. An employee who makes influential recommendations that are reviewed by superiors is still exercising significant discretion and indepen-

dent judgment. *Id.* Finally, although an employee may receive detailed instructions regarding the daily work that must be performed, the employee's functions, the nature of the employee's occupation, and the "diverse fluidity of daily situations" may indicate more than an occasional use of discretion. *López Vega,* 103 English Translations at 252.

Under the short test for "executives," Iberia has the burden of establishing that: (1) Plaintiff's primary duty consisted of managing Iberia's enterprise or a customarily recognized department or subdivision of Iberia; and (2) Plaintiff customarily and regularly directed the work of two or more employees of the enterprise, department, or subdivision. Article IV, Regulation 13, P.R. Minimum Wage Board (Fourth Revision), approved June 26, 1990.

■ The first prong of this test centers on the management functions of the employee. Examples of these management tasks include overseeing the work of lower level employees, assigning pre-ordered tasks to other employees, setting and adjusting other employees' compensation, receiving minimal supervision from superiors, appraising other employees, handling the employee complaints, disciplining employees when necessary, dividing the work among employees, and/or controlling the type and the use of previously ordered materials. *Castro Sosa v. Puerto Rico Water Sources Authority,* 107 D.P.R. 711, 107 English Translations 787, 789–90 (1978); 29 C.F.R. § 541.102 (1995). "The supervision of other employees is clearly a management duty." *Donovan v. Burger King Corp.,* 672 F.2d 221, 226 (1st Cir.1982). Even though an employee may be enforcing the detailed policies of upper level management, "ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'" *Id.*

■ Significantly, although the language "primary duty" implies that the employee must perform these management functions over fifty percent of his working time, this is not necessarily true. Management may be an employee's principal duty even though that employee spends a majority of the time performing manual tasks. *Dono-*

*van,* 672 F.2d at 226; 29 C.F.R. § 541.103 (1995). Moreover, as long as the employee is "in charge" of the particular business department, the employee does not need to make significant influential decisions affecting the outcome of the business. *Id.* at 227; *Dole v. Papa Gino's of America, Inc.,* 712 F.Supp. 1038, 1043 (D.Mass.1989). An assistant manager, for example, that supervises other employees and performs management functions while working over fifty percent of the time on manual tasks without the power to make significant decisions still has the primary duty of managing the business.

■ The second prong of the "executive" short test is more straight forward. An employee customarily and regularly directs the work of two or more employees by supervising at least two full-time employees or "any number of part-time employees, as long as the total number of hours supervised exceeds eighty." *Dole,* 712 F.Supp. at 1044.

### B. Conclusions of Law

Iberia has satisfied its burden of proving that Plaintiff is both an "administrator" and an "executive" under Puerto Rico's Working and Hours Days Act and the Seventh Day Act. The documentary evidence as well as the testimony of Iberia's witnesses and Plaintiff himself clearly establishes that: (1) Plaintiff performed office work directly related to management policies and Iberia's general business operations; (2) Plaintiff customarily and regularly exercised discretion and independent judgment; (3) Plaintiff's primary duty consisted of managing Iberia's Traffic Department; and (4) Plaintiff customarily and regularly directed the work of at least two Iberia employees working at the Luis Muñoz Marín International Airport.

■ Iberia's evidence established both prongs of the "administrator" short test. First, undoubtedly, Plaintiff labored most of his day at the airport completing non-manual tasks. In the findings of fact of this opinion, the Court listed twelve different office activities that consumed most of Plaintiff's time

and energy.[44] Many of these activities, including supervising other employees, attending to the passengers' needs, approving of Iberia's expenditures at the airport, ordering the purchase of new materials, and using Iberia's petty cash fund, have been considered by the Puerto Rico Supreme Court as primary examples of non-manual tasks. *See Lehman v. Ehret, Inc.,* 103 P.R.R. 264, 103 English Translations 364, 370–71 (1975). Plaintiff's assumption that his daily performance of manual tasks at the airport customs area, immigration area, transit room, ramp and counters precludes this finding is plainly incorrect. His performance of some manual tasks with his hands does not alter the fact that Plaintiff was essentially a "white-collar" employee.

Plaintiff's non-manual tasks were substantially important to the success of Iberia's administrative operations. Without Plaintiff's supervision of the lower level employees working at the airport, Iberia's operations would not have flowed very smoothly. Plaintiff was able to supervise the employees, coordinate their activities, inform airport offices of the flight schedules, and approve of the expenditure of large amounts of money for supplies and employee hotel stays. His role had a substantial impact on Iberia's image at the airport, on how passengers reacted to Iberia's services, and on Iberia's financial success.

Second, Iberia demonstrated that Plaintiff customarily and regularly exercised his discretion and independent judgment while carrying out these non-manual tasks. Plaintiff was free from immediate supervision to make decisions with respect to matters of significance. His reports on employee absences, his approval of overtime, his frequent approval of expenditures for goods and services without supervision, his orders requesting new materials, his representation of Iberia in criminal cases, and, most importantly, his supervision of Iberia employees and independent contractors required the use of independent judgment and all involved matters of significance.

Plaintiff exercised discretion when he altered the hourly schedule of the airport workers. He exercised discretion when corrected employee mistakes and directed their work at the airport. When there was a problem at the airport, all the employees turned to Plaintiff, their immediate supervisor, for direction. Significantly, Plaintiff had the discretion to make influential recommendations on the operations of the airport and the working status of an employee.

Plaintiff argues that most of his office work consisted of performing clerical tasks and carrying out his superiors' orders that required absolutely no independent judgment. He suggests that his daily work involved the application of his knowledge and skill to predetermined procedures rather than the use of discretion in selecting an option among several permitted choices. The evidence, however, does not substantiate Plaintiff's argument. Plaintiff's interpretation of discretionary authority is very narrow.[45] The nature of Plaintiff's job as Traffic Manager and Acting Station Manager and the likelihood of facing unanticipated daily problems at the airport required Plaintiff to exercise discretion. A primary example of an unexpected situation that required independent judgment was Plaintiff's authority to upgrade passengers from "coach" status to "first-class" depending on the identity of the passenger and his authority to approve of "denied boarding" compensation.

Having found that Plaintiff performed office work directly related to Iberia's general business operations and that Plaintiff regularly exercised discretion and independent judgment, the Court finds that Plaintiff qualifies as an "administrator" within the Minimum Wage Board's definition. Plaintiff, therefore, is exempt from the protective pro-

---

44. *See* Findings of Fact, *supra* at 308.

45. For example, Plaintiff argues that the General Manager of Iberia in Puerto Rico, the highest official in the company, exercised very little discretion and independent judgment in his job.

Rodriguez Dep., Dkt. No. 18, Joint Ex. I at 95. Clearly, the General Manager of Iberia had ample discretion to resolve disputes, coordinate the operation of Iberia airlines in Puerto Rico, and perform a myriad of functions to ensure the success of the airline.

visions of the Working and Hours Days Act and the Seventh Day Act.

■ Although unnecessary, Iberia also produced overwhelming evidence demonstrating that Plaintiff qualifies as an "executive" of Iberia as well.[46] There is absolutely no question that Plaintiff's primary duty as Traffic Manager and Acting Station Manager was managing Iberia's passengers department, a recognized subdivision of Iberia. Plaintiff oversaw the work of lower level employees and independent contractors, directed and appraised their work, fielded employee complaints, reprimanded employees when required, and controlled the amount and the type of goods and services that Iberia paid for. Although Plaintiff argues that he was merely enforcing the policies of upper level management, this is a supervisory function and a defining characteristic of management. In addition, the fact that Plaintiff performed manual tasks as he supervised the employees does not minimize his managerial role. Since Plaintiff admits that he exercised his supervisory duties over at least seven people during the employees' respective work shifts, there is also no question that Iberia proved the second prong of the "executive" short test.[47] Consequently, Plaintiff qualified, without a doubt, as an "executive" of Iberia within the meaning of the Minimum Wage Board's definition.

In an attempt to prove that he was neither an "administrator" nor an "executive," Plaintiff makes a series of unfounded assumptions regarding the functions of an "administrator" and an "executive." Plaintiff assumes that an employer must have written policies outlining the special powers of all its administrators and executives.[48] Plaintiff also assumes that all administrators and executives have the power of attorney.[49] Additionally, Plaintiff assumes that only the Mandos of Iberia can be administrators and executives.[50] Finally, Plaintiff assumes that an individual in charge of passengers can never be an administrator or an executive.[51] Plaintiff never substantiates these assumptions with any supporting authority or logical reasoning. These conclusory assertions, without more, are not enough to punch even a small hole into the finely weaved arguments and evidentiary evidence of Iberia.

## CONCLUSION

From January 1, 1984 until June 24, 1991, Plaintiff was the Traffic Manager and Acting Station Manager for Iberia. Plaintiff filed the instant complaint alleging that, during this seven year period, Iberia failed to comply with Puerto Rico's Working and Hours Days Act (Act No. 379, as amended) and the Seventh Day Act (Act No. 289, as amended) by not paying him for overtime, work performed on the weekly day of rest, and work completed during mealtime. After scrutinizing carefully the evidence presented by both sides in a three day bench trial, the Court finds that Plaintiff meets the requirements of the short-test for an "administrator" and an "executive" under both Acts and, therefore, is exempt from the Act's overtime provisions. Plaintiff's complaint is hereby **dismissed with prejudice.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

46. In his post-hearing memorandum, Plaintiff argues that Iberia abandoned its defense that he was an "executive." *See* Pl.'s Memo., Dkt. No. 23, at 52–53. The Court finds, however, that the opposite is true. Iberia argued forcefully in its post-hearing memorandum that Plaintiff qualified as an "executive." Def's Memo., Dkt. No. 25, at 53–56.

47. Pl.'s Memo, Dkt. No. 23, at 31, 51.

48. *Id.* at 8, 9, 10, 26, 28, 45–47.

49. *Id.* at 12, 21, 28, 35–36.

50. *Id.* at 14, 19, 45.

51. *Id.* at 17.